November 29, 2012

Hon. Jacqueline Scott Corley, United States Magistrate Judge
Courtroom F, U.S. District Court for the Northern District of California
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   Greer v. Electronic Arts, Inc., Case No. 3:10 CV 3601 RS, Letter Brief pursuant to
        Order (Docket No. 148), Re: 30(b)(6) deposition

Dear Judge Corley:

The parties submit this joint letter brief regarding the parties' Rule 30(b)(6) deposition dispute in accordance with the Court's Order Re: Plaintiff's Motion to Compel and to Re-Open Discovery (Dkt. No. 148).

## PLAINTIFF'S STATEMENT

Plaintiff respectfully asserts that Defendant Electronic Arts, Inc.'s preparation and defense of the deposition of Kevin Gunderman is consistent with its pattern of wrongfully frustrating Plaintiff's discovery efforts in this case. Deposition excerpts to which this brief refers were submitted as Ex. 2 to Plaintiff's Second Motion to Compel. A list summarizing the more than 40 questions that the 30(b)(6) deponent could not or would not answer was submitted as Ex. 42 to that motion.

### I.      Facts

The Court's Order of June 27, 2012, provides, in pertinent part:

In compliance with the Court's order on plaintiff's motion to compel, Defendant disclosed additional financial information after the close of discovery. Plaintiff contends that there are inconsistencies between earlier and later-produced information, and that he does not understand all of defendant's accounting methodologies and terminology…[P]laintiff has made an adequate showing that a deposition now is warranted in light of defendant's post-cut-off productions. Additionally, there is no undue prejudice to Defendant in permitting a single deposition, given that trial is not scheduled to begin until September 24, 2012. Accordingly, no later than August 10, 2012, defendant shall make available a witness under Rule 30(b)(6) to testify for up to 4 hours.

Plaintiff noticed the deposition on the following subjects:

1.  The accounting terminologies used in EA's interrogatory responses and document productions pursuant to Plaintiff's discovery requests in this matter and Fed. R. Civ. P. 26 (collectively, "productions");

2.  The accounting methodologies used in compiling and computing the figures stated in EA's productions;

3.  The sources of the information used in compiling and computing the figures stated in EA's productions;

Discovery Letter Brief re 30(b)(6) Deposition                                          Page 1
pursuant to Order (Docket No. 148)
Greer v. Electronic Arts, Inc., Case No. 3:10 CV 3601 RS

4. The types, classifications, sources, and evidence of revenues as components of the figures stated in EA's productions;

5. The types, classifications, sources, and evidence of expenses stated in EA's productions and of the "direct and valid nexus" between such expenses and the production of products that include and/or have included *Destructible Times*;

6. The currency conversion methodologies and exchange rates used in compiling and computing the figures stated in EA's productions; and,

7. The inconsistencies among Defendant's several productions.

Defendant did not object to the scope of the deposition as noticed; and during the deposition, defense counsel objected to only five questions as being beyond the scope of the deposition:

1. Whether Defendant had verified the accuracy of the financial information set forth in its fourth supplemental responses to Plaintiff's discovery requests (Depo. @ 35:22-36:1);

2. Whether prior drafts or iterations of Defendant's second supplemental responses to discovery and the financial information within those responses had been prepared (Depo. @ 38:6-39:19);

3 & 4. Two questions as to why EA began selling *Tiberian Dawn* again in Fiscal 2009[1] after ceasing to sell it in 2002 (Depo. @ 117:17-21; 118-9-12); and,

5. Whether any products that included *Destructible Times* were sold in countries other than t those listed in Defendant's financial disclosures (Depo. @ 152:15-20).

The designated witness, Kevin Gunderman, learned he would be a witness only four days before the deposition. To prepare, he met once with counsel (Depo. @ 16:21-17:4). He reviewed the information already disclosed to Plaintiff, "some materials that had been used to prepare those documents, basically the P & Ls," some e-mails related to the P & Ls, and a digital file provided by a corporate analyst. (Depo. @ 10:20-11:15.) He spoke with the analyst, "Vishal," who pulled the P & L information. He spoke with "Grace" from the currency group, about monetary conversions. He did not know Vishal's or Grace's last names. He explained his role in the deposition as, "[r]epresenting the company with respect to certain financial information." (Depo. @ 18:14-19:1.)

Defense counsel instructed Mr. Gunderman not to provide any information he learned from defense counsel. (Depo. @ 171:24-172:1.) Counsel also directed Mr. Gunderman not to identify any documents he reviewed that were provided by counsel unless those documents would be a basis for his deposition testimony. (Depo. @ 10:14-17.) Counsel told him, "If you reviewed documents independently, you can identify those documents." (Depo. @ 10:18-19.)

Mr. Gunderman answered five questions with the statement that he had no personal knowledge, despite the fact that he was chosen as the person most knowledgeable. (Depo. @ 38:9, 39:18-19, 115:12-13, 136:20-21, 166:25.)

In all, Defendant's designee was unable, or unwilling, to answer more than 40 relevant questions within the deposition's scope. The questions are attached as Exhibit 42 to Plaintiff's Further Motion to Compel.   (Docket No 140-42.)

---

[1] Defendant first disclosed profits from these sales in its fifth supplemental responses, dated July 4, 2012), after denying for more than a year that such profits existed.  Fiscal 2009 encompassed much of 2008.

Discovery Letter Brief re 30(b)(6) Deposition                                          Page 2
pursuant to Order (Docket No. 148)
Greer v. Electronic Arts, Inc., Case No. 3:10 CV 3601 RS

After the deposition, defense counsel has refused to provide documentary support for its financial disclosures, the documents Mr. Gunderson reviewed or responses to more than 40 unanswered questions, by asserting that Plaintiff is not entitled to this information because discovery is closed

## II.   **Argument**

The designee's role is to provide the entity's interpretation of events and documents. It is not expected that the designee have personal knowledge as to all relevant facts; however, the designee must become educated and gain the requested knowledge to the extent reasonably available. (Recognizing that a Rule 30(b)(6) deposition represents the entity's knowledge and not that of the individual deponent).  *See* La. Pac. Corp. v. Money Mkt. 1 Institutional Inv...., 2012 U.S. Dist. LEXIS 128531 (N.D. Cal., Sept. 10, 2012).  Defendant failed to meet its Fed. R. Civ. P. 30(b)6) obligations.

Defendant was obligated to produce a witness who was knowledgeable about the noticed deposition topics with respect to any and all facts known to Defendant or its counsel.  *See,* Oracle Am. v. Google, Inc., 2011 U.S. Dist. LEXIS 88747 (N.D. Cal., Aug. 10, 2011).  However, Mr. Gunderman was not prepared to testify accordingly.  In fact, defense counsel directed Mr. Gunderman *not* to provide information or identify documents defense counsel had given him. Further, Defendant has since refused to produce any documents Mr. Gunderman reviewed to prepare for the deposition.

"The entity must produce a witness prepared to testify with the knowledge of the subsidiaries and affiliates if the subsidiaries and affiliates are within its control."  Ethypharm SA France v. Abbott Labs., 271 F.R.D. 82 (D. Del. 2010).  Mr. Gunderman did not know about subsidiaries under Defendant's control, including Westwood Studios, Inc., which, as Defendant's predecessor in interest, was a central actor in this case from 1995 – 2004.

"Assuming proper notice of the subject matter, "I don't know" is generally not a proper response from a 30(b)(6) designee, nor is any answer suggesting that the designee is responding to the best of his personal knowledge."  Allison v. CRC Ins. Servs. Inc., 2011 U.S. Dist. LEXIS 131546 (N.D. Ill. 2011).  Mr. Gunderman stated that he did not know the answers to more than 40 questions, and his answer to five questions was that he lacked personal knowledge.

Defendant "was responsible for either fully preparing [its designee] to testify or providing additional 30(b)(6) witnesses who were prepared, which it did not do concerning the majority of the noticed topics."  LabXpress, LLC v. Lab. Corp. of Am., 2011 U.S. Dist. LEXIS 29548 (W.D. Okla., Mar. 22, 2011).  Defendant had an affirmative duty to make available "such number of persons as will" be able "to give complete, knowledgeable and binding answers" on its behalf.  Reilly v. NatWest Mkts. Group Inc., 181 F.3d 253, 268 (2nd Cir. 1999).  Defendant provided one deponent who could not or would not give answers.

Defendant has failed to meet its obligation to produce a fully prepared designee, and should not be rewarded for non-compliance.  Given Defendant's great resources, and its company-wide reporting and database systems,[2] it is not unduly burdensome to require Defendant to proffer an adequately prepared designee.

---

[2] Please see the contemporaneously filed joint letter brief for information about Defendant's databases and reporting systems.

Discovery Letter Brief re 30(b)(6) Deposition                                    Page 3
pursuant to Order (Docket No. 148)
Greer v. Electronic Arts, Inc., Case No. 3:10 CV 3601 RS

### III.     Relief Requested

Plaintiff requests that he be allowed to conduct a new deposition within the same scope. Defendant should be ordered to provide an adequately prepared designee or designees, to answer questions with all facts known to Defendant or its counsel, and to produce documents reviewed by its deponent(s) in preparation for the deposition.

## DEFENDANT'S STATEMENT

On June 27, 2012, Judge Seeborg directed EA to produce a witness pursuant to Rule 30(b)(6) to testify for no more than four hours regarding the terminology and methodologies reflected in EA's financial disclosures and purported inconsistencies between those disclosures.  Kevin Gunderman, Chief Financial Officer of the EA label responsible for the *Command & Conquer* franchise, appeared for deposition on August 3, 2012 and, over the course of more than four hours, answered dozens of questions within the scope of the Rule 30(b)(6) designation.  Now, nearly four months later, Plaintiff moves to compel a further deposition based upon Gunderman's failure to answer a series of questions that far exceeded the scope of the Rule 30(b)(6) designation, as well as other imagined discovery abuses.  Plaintiff's motion is both untimely and meritless, and it should be denied.

### I.     Plaintiff's Motion Is Untimely

Local Rule 37-3 states that "no motion to compel fact discovery may be filed more than 7 days after the fact discovery cut-off."  L.R. 37-2.  The fact discovery cutoff in this case was December 1, 2011.  However, because EA's Rule 30(b)(6) designee, Kevin Gunderman, did not appear for deposition until August 3, 2012, Plaintiff had until seven days following the deposition— *i.e.*, August 10, 2012—to file a motion to compel.  Plaintiff did not raise any issues regarding Gunderman's testimony until October 8, 2012, *more than two months after the deposition*.  *See* Declaration of Robert N. Klieger in Opposition to Second Motion to Compel ("Klieger Decl."), Ex. U.  Plaintiff waited more than another month before filing his motion to compel.  The motion is untimely and should be denied for this reason alone.

### II.     Gunderman Was Adequately Prepared To Answer, And Answered, All Questions Within The Scope Of The Rule 30(b)(6) Deposition

Prior to the discovery cutoff, EA disclosed the gross and net revenues generated by sales of *Command & Conquer: Tiberian Dawn*, and of compilation packs containing the game, from the 2007 fiscal year forward.  Klieger Decl., Ex. B at 8-11.  In his first motion to compel, filed on November 30, 2011, Plaintiff asked that EA be ordered to produce the same information for all periods from August 1998 forward.  *Id.*, Ex. G at 11.  The Court indicated at the hearing on the motion that, should EA's motion for summary judgment on its affirmative defense of laches be denied, financial information related to those earlier periods would be relevant.  *Id.*, Ex. H at 51-52. On February 1, 2012, following the denial of EA's motion for summary judgment, the Court ordered this financial information produced.  *Id.*, Ex. I at 3-4.  EA served supplemental interrogatory responses reflecting that information on February 21, 2012.  *Id.*, Ex. C at 2-4 & Ex. B.

EA thereafter supplemented its financial disclosures on several occasions.  First, on March 7, 2012, EA served supplemental interrogatory responses that included a breakdown of the various

Discovery Letter Brief re 30(b)(6) Deposition                                    Page 4
pursuant to Order (Docket No. 148)
Greer v. Electronic Arts, Inc., Case No. 3:10 CV 3601 RS

categories of deductible expenses incurred in connection with sales of *Command & Conquer: Tiberian Dawn* and compilation packs including the game, including research and development costs, marketing and sales costs, general and administrative costs, bad debt, and taxes. *Id.*, Ex. D at 1-3 & Ex. A. Next, on March 16, 2012, EA produced revenue and expense information for downloads of *Command & Conquer: Tiberian Dawn* from Sony's PlayStation® Network, which had not been captured in the previous financial run. *Id.*, Ex. E at 1-3 & Ex. B.[3] EA subsequently updated its responses to reflect additional revenues and expenses through the end of the 2012 fiscal year. *Id.*, Ex. F at 1-3 & Ex. A.

On April 17, 2012, Plaintiff filed a Motion for Limited Re-Opening of Non-Expert Discovery, in which he sought leave to (1) depose Aaron Kaufman, the *Command & Conquer* Community Manager from 2004 to 2010; (2) seek identification of and depose Kaufman's supervisor; (3) depose the current *Command & Conquer* Community Manager; (4) propound document discovery related to EA's relationship with XWIS; (5) take a Rule 30(b)(6) deposition of EA "to clarify the meaning of non-standard accounting terms" in EA's financial disclosures and to resolve "seeming inconsistencies among [those] disclosures"; (6) depose a representative sample of third party websites that had provided downloads of *Command & Conquer: Tiberian Dawn* to the public; and (7) propound requests for admissions. *Id.*, Ex. L. Plaintiff subsequently "supplemented" his motion to seek the production of 22 categories of financial documents and information that he argued he needed to "accurately assess sales, profits, fees, expenses, deductions, discounts, exchange rates, [and] taxes, and to verify and if appropriate, challenge, the figures produced and representations made by [EA]." *Id.*, Ex. M.

On June 27, 2012, Judge Seeborg denied each and every one of Plaintiff's requests, with one limited exception. *Id.*, Ex. N. Because Plaintiff asserted that "he does not understand all of defendant's accounting methodologies and terminology" reflected in EA's financial disclosures, and further claimed there were "inconsistencies between earlier and later-produced information," Judge Seeborg ordered EA to make available a witness under Rule 30(b)(6) "to testify for up to four hours regarding the financial information it has produced." *Id.*, Ex. N at 4, 7. EA designated Kevin Gunderman, Chief Financial Officer of the EA label that is responsible for the *Command & Conquer* franchise, as its Rule 30(b)(6) designee. *Id.* ¶ 15. Gunderman appeared for deposition on August 3, 2012. Gunderman was adequately prepared to answer and, over the course of his more than four-hour deposition, answered all of Plaintiff's questions concerning the accounting methodologies and terminology reflected in EA's financial disclosures and purported inconsistencies between those disclosures.

---

[3] On March 7, 2012, Plaintiff's counsel raised a concern that EA's financial disclosures did not include gross revenues from sales of *Command & Conquer: Tiberian Dawn* for the Sony PlayStation® 3. Klieger Decl. ¶ 19. EA conducted an immediate investigation and determined that those gross revenues, totaling approximately $300,000—or roughly one-half of one percent (0.5%) of EA's aggregate sales— had improperly been coded to the *Command & Conquer* franchise generally, rather than to any particular title within the franchise, and therefore had not been captured in the previous financial run. *Id.* ¶ 20. EA promptly corrected that error. *Id.*; *see id.*, Ex. D.

Discovery Letter Brief re 30(b)(6) Deposition                                            Page 5
pursuant to Order (Docket No. 148)
Greer v. Electronic Arts, Inc., Case No. 3:10 CV 3601 RS

Plaintiff's advances four arguments in support of its motion to compel, none of which has any merit:

First, Plaintiff asserts that EA's counsel improperly "instructed Mr. Gunderman not to provide any information he learned from defense counsel." Plaintiff's Statement ("Pl.'s St.") at 3. In fact, EA's counsel instructed Gunderman to exclude information he learned from counsel in responding *to a single question,* regarding a mistake in EA's original interrogatory responses. Plaintiff's counsel did not take issue with the instruction, but instead clarified that he was asking only about the underlying facts, and not about communications with counsel:

> MR. KLIEGER
>
> … In answering the question as to why that mistake was made in the original set of responses, if you have any information on that separate and apart from what you've learned from counsel, you can testify as to that. But if you don't have any information separate and apart from what you learned from counsel, then you shouldn't offer any testimony on that.
>
> BY MR. POSNER:
>
> Q.   I should also point out that the mere fact that underlying facts are conveyed by counsel does not make the underlying facts privileged. And, therefore, if you have any knowledge of the underlying facts, I'm not particularly concerned about the contents of any communications. I'm simply asking about the underlying facts.

EA agreed with this statement of the law and permitted Gunderman to testify based upon his knowledge of the underlying facts. Plaintiff's counsel did not voice any objection at the deposition, and he has no basis for doing so now.

Second, Plaintiff contends that EA's counsel improperly "directed Mr. Gunderman not to identify any documents he reviewed that were provided by counsel unless those documents would be a basis for his deposition testimony." Pl.'s St. at 3. That instruction was entirely proper. It is well established that counsel's selection of documents for a witness to review in preparing for his or her deposition constitutes attorney work product, and that an examining attorney must therefore establish that the deponent is relying upon such documents in giving his or her testimony before they must be identified. *See Sporck v. Peil*, 759 F.2d 312, 317-19 (3d Cir. 1985). Here, Plaintiff's counsel did not even attempt to lay that requisite foundation, and the instruction was therefore entirely appropriate.

Third, Plaintiff assets that "Gunderman answered five questions with the statement that he had no personal knowledge, despite the fact that he was chosen as the person most knowledgeable," and that Gunderman was further "unable, or unwilling, to answer more than 40 relevant questions within the deposition's scope." Pl.'s St. at 3. In fact, just *one* of the questions at issue was within the scope of the Rule 30(b)(6) deposition ordered by Judge Seeborg, and EA subsequently provided

Discovery Letter Brief re 30(b)(6) Deposition                                                 Page 6
pursuant to Order (Docket No. 148)
Greer v. Electronic Arts, Inc., Case No. 3:10 CV 3601 RS

a sworn response to that question.[4]  The other questions did not relate to the accounting
methodologies and terminology reflected in EA's financial disclosures, or to any purported
inconsistencies between those disclosures, but instead concerned the minutiae of EA's accounting
systems and such disparate matters as:

- how long the *Command & Conquer* franchise has been part of Defendant's BioWare label;

- why Mexico is categorized as part of the "Europe" territory in EA's reporting systems;

- why EA began selling *Command & Conquer: Tiberian Dawn* again in 2009;

- which EA employees have tracked costs regarding downloads of products that have included *Command & Conquer: Tiberian Dawn*;

- whether the *Command & Conquer* community manager, from 2007 forward, has been part of the marketing team;

- whether EA's BioWare label has a dedicated marketing component;

- whether the giveaway of *Command & Conquer: Tiberian Dawn* in 2007 has ever been identified as a "project" in the head count database, and if so, the name or identifier of the project and who was responsible for it.

The information sought by these and the other questions that are the subject of Plaintiff's motion
falls far outside the scope of the limited Rule 30(b)(6) deposition ordered by Judge Seeborg.

Finally, Plaintiff complains that, "[a]fter the deposition, defense counsel has refused to
provide documentary support for its financial disclosures" and "documents Mr. Gunderman
reviewed" in preparing for his deposition.  Pl.s' St. at 3.  Judge Seeborg did not order EA to produce
documentary support for its financial disclosures; to the contrary, he wholesale *denied* that aspect of
Plaintiff's Motion for Limited Re-Opening of Non-Expert Discovery.  Klieger Decl., Ex. N at 7.
Nor did Judge Seeborg order EA to produce documents that its Rule 30(b)(6) designee reviewed in
preparing for the deposition.  *Id.*, Ex. N at 4-5.  In fact, Plaintiff did not even *request* the production
of those documents in his written Rule 30(b)(6) deposition notice.  *Id.*, Ex. O.  Accordingly, EA was
under no obligation whatsoever to produce those documents.

In short, Plaintiff's motion to compel a further Rule 30(b)(6) deposition of EA, and to require
the production of documents in connection therewith, is untimely and entirely devoid of merit.  It
should be denied.

## PLAINTIFF'S REPLY

As to EA counsel's instructions not to answer, EA misstates the testimony.  EA instructed
Mr. Gunderman not to answer twice, not once.  At p. 15:16-8, Plaintiff asked when Mr. Gunderman

---

[4] The single question within the scope of Judge Seeborg's order that Gunderman was unable to answer
concerned "[t]he definition and components of 'total controllable G&A,'" which was one of the line
items in EA's financial disclosures.  Gunderman researched and provided a sworn written response to
that question following his deposition.  Klieger Decl., Ex. P.

Discovery Letter Brief re 30(b)(6) Deposition                                   Page 7
pursuant to Order (Docket No. 148)
Greer v. Electronic Arts, Inc., Case No. 3:10 CV 3601 RS

first learned he would be a witness, and EA counsel instructed him not to answer if he learned that information from counsel.  Since Mr. Gunderman was able to answer without reference communications from EA counsel, there was no need to take issue with the instruction.  At 171:22-172:2, EA counsel made the same objection when Plaintiff asked why it took EA months to disclose its sales since 2009 of *Command & Conquer Gold.*  Plaintiff then explained that underlying information is not privileged because provided by counsel, but EA counsel did *not* agree.  He was silent.  Mr. Gunderman answered that he did not know, and three seconds later,[5] EA counsel declared the deposition over because the four hour limit had been reached.  Denied the ability to ask whether Mr. Gunderman's answer included information provided by counsel, Plaintiff sought to hold the deposition open. (172:17-23.)  Plaintiff has not waived the right to know why EA took so long to acknowledge the sales (in admissible form, not merely in EA counsel's declaration ( at ¶ 20), unless counsel resigns and offer himself as a witness.  To the extent that EA counsel's declaration about the reasons EA failed to disclose its sales, is offered in lieu of deposition testimony, Plaintiff is entitled to the documents he and the persons he interviewed relied in giving the answer in Paragraph 20 of EA counsel's declaration, and counsel should be subject to cross examination.  It is absurd for Plaintiff and the Court to be bound by the unsupported testimony of EA counsel, such as he gave at the January 5 hearing, while his attorney status shields him from cross-examination.

Documents reviewed by Mr. Gunderman to prepare for the deposition, which were not provided by counsel, are not work product and should be produced.  *See, e.g.,*  FDIC v.Wachovia Ins. Servs., 241 F.R.D. 104 (D. Conn. 2007).  This is especially true of the materials provided by "Vishal," which reflect the underlying database information on which the financial spreadsheets produced by EA counsel rely, upon which Mr. Gunderson based his testimony, and which EA continues to refuse to produce.

EA's theory as to the deposition's scope is too narrow.  The June 27, 2012 order stated that Plaintiff's stated reasons warranted a deposition; the order did not limit Plaintiff's questions to two issues addressable in far less than the four hours the Court allowed.  The Judge's  refusal to order new financial document discovery based on post-cutoff questions from Plaintiff's expert is irrelevant to Defendant's obligations to respond to Interrogatories 10 -13 and Requests for Production 8 and 9 (Docket No. 140-3) to which the Magistrate ordered responses.  Plaintiff's deposition notice was within the scope of those discovery requests. Fed. R. Civ. P. 30(b)(6) obligates the responding entity to provide a witness who can answer questions regarding the subject matter listed in the *notice*.  "[T]he description of the scope of the deposition in the notice as the minimum about which the witness must be prepared to testify, not the maximum." Detoy v. City & County of San Francisco, 196 F.R.D. 362, 366 (N.D. Cal. 2000)*; see also*  La. Pac. Corp. v. Money Mkt. 1 Institutional Inv...., 2012 U.S. Dist. LEXIS 128531 (N.D. Cal. 2012) (quoting Detoy for this proposition.)  If the designated deponent cannot answer, then the entity has failed to comply with its Fed. R. Civ. P. 30(b)(6) obligations and may be subject to sanctions, etc.  The entity has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are known or reasonably available to the corporation.  Defendant did not object to the notice.  Plaintiff's questions were within the scope of the notice and EA failed to prepare its witness for them, as was its duty.

Plaintiff is entitled to the requested relief.  Defendant should be required to pay the reasonable costs attributable to its failures.

_____

[5] The deposition transcript identifies the time of each line of the proceeding.

Discovery Letter Brief re 30(b)(6) Deposition                                                    Page 8
pursuant to Order (Docket No. 148)
Greer v. Electronic Arts, Inc., Case No. 3:10 CV 3601 RS

Respectfully Submitted,

/s/ Steven C. Posner                              /s/ Robert N. Klieger

Steven C. Posner                                  Robert N. Klieger
Attorney for Plaintiff                            Attorney for Defendant

Discovery Letter Brief re 30(b)(6) Deposition                                    Page 9
pursuant to Order (Docket No. 148)
Greer v. Electronic Arts, Inc., Case No. 3:10 CV 3601 RS